*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2014-187

SEPTEMBER TERM, 2014

| | |
|---|---|
| In re B.G. and B.G., Juveniles | } APPEALED FROM: |
| | } |
| | } Superior Court, Bennington Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 77/78-6-12 Bnjv |
| | |
| | Trial Judge: David Howard |

In the above-entitled cause, the Clerk will enter:

Father appeals from the termination of his parental rights in twins B.G. and B.G. Father argues that the court erred by failing to determine if he and the children's foster parents love the children. We affirm.

B.G. and B.G. were born in June 2012. Several days after their birth, the Department for Children and Families (DCF) filed a petition alleging that they were children in need of care or supervision (CHINS) due to a lack of proper parental care. DCF alleged that mother had used illegal drugs while pregnant and failed to comply with a DCF case plan with respect to her two older children. There was a safety plan in place with respect to B.G. and B.G., and DCF alleged that mother had not followed this plan in any significant manner. As to father, the petition alleged that he had left the twins in inappropriate positions for sleeping, he was inattentive to the twins' needs as identified by medical staff, and that he left other children for mother to watch while she was at the hospital to care for the twins. Parents admitted that the children were CHINS. In October 2013, DCF moved to terminate both parents' rights. Mother voluntarily relinquished her rights, contingent on the termination of father's rights. Following a hearing, the court concluded that termination of father's rights was in the children's best interests.

The court found in relevant part as follows. The children were initially placed with their maternal grandmother. Father's contact with the children was supposed to be supervised until his progress in certain programs was ascertained and monitored. Nonetheless, the children's grandmother allowed mother to stay at father's residence with the children. The children were consequently removed from their grandmother's home and placed with a foster family. Father became resistant to services to the point where DCF and other agency personnel refused to go to father's residence due to his threatening conduct. Father made little progress on the most important goals identified for him. He continued to struggle with housing and obtaining a steady income, he did not take any parenting classes, and he missed numerous visits with the children. While father admitted to a substance abuse problem, he did not attend any rehabilitation program. He stopped having contact with the twins in August 2013. Father was using heroin and decided that it was not good for the twins to see him in such a state of addiction. Father had contact once more in November 2013, and no contact after that time.

At the time of the hearing, father was living with the mother of his other children. He depended on her for income and a place to live. Father testified that he stopped using heroin on his own in early 2014, but he did not have any independent verification of this. Father acknowledged that he could not take on custody of the twins at the time of the hearing due to his financial and housing issues, and his need for counseling and possible treatment for his addiction. He was unsure how long it might take for him to be able to parent the children.

The court found that the twins had been living together in the same foster home since 2012. They were doing extremely well there and had developed a good relationship with their foster parents. Both parents agreed that the placement was beneficial for the children and that it was a loving and affectionate place for them.

Based on these and other findings, the court turned to the four statutory best-interest factors. As to the most important factor, the court found it extremely unlikely that father could resume his role as a parent within a reasonable time period. Indeed, the court noted, it would be more than resuming a role, as father had had a minimal parenting role to date. In the seven months before the hearing, he had chosen to have no role at all because of his drug use. This period of total absence from the children's lives followed a period of over a year of minimal progress on case goals. As recounted above, father was still in flux over housing; he still did not have employment or other income; he had had a recent period of months during which he was using heroin and its use prevented contact with the twins; he was not in a treatment program; and he had had just restarted counseling with one session in March. The court concluded that father had stagnated in his ability to parent, and that he could not parent the children within a reasonable time.

As to father's role in the children's lives, the court found that many of the same observations and conclusions above applied to this statutory factor as well. He had played no role in the children's lives for seven months and he had had only modest interaction before that time. His contact was limited by his own actions. The court found that while father might have love and affection for the children, there was little else to his role and it had certainly not been constructive overall. Through his actions, father demonstrated that he often placed his own concerns and desires above those of the children. Meanwhile, the children's interaction with their foster family had been positive, steady, and reliable. Thus, based on its weighing of the statutory best-interest factors, the court concluded that termination of father's rights was in the children's best interests. This appeal followed.

Father argues that the court erred by failing to make findings as to whether he and the foster parents loved the children. He maintains that such findings were essential to the disposition of this case.

As we have often repeated, the trial court must consider four statutory factors in assessing a child's best interests. See 33 V.S.A. § 5114. The most important factor is the likelihood that the natural parent will be able to resume his or her parental duties within a reasonable period of time. In re B.M., 165 Vt. 331, 336 (1996). As long as the court applied the proper standard, we will not disturb its findings on appeal unless they are clearly erroneous; we will affirm its conclusions if they are supported by the findings. In re G.S., 153 Vt. 651, 652 (1990) (mem.).

The court applied the appropriate standard here and we find no grounds on which to disturb its decision. The court was not required to make a specific finding as to whether father,

or the children's foster parents, loved the children. That consideration is encompassed within the various statutory best interests standards, including the requirement that the court assess father and the foster parents' relationship with the children, which the court did. See 33 V.S.A. § 5114(a)(1). The court also considered, as required by statute, whether father had "played and continued to play a constructive role" in his children's lives, "including personal contact and demonstrated emotional support and affection." Id. § 5114(a)(4). On this point, the court found that while father might love the children, he had not played a constructive role in their lives. The court also concluded, as set forth above, that father could not parent the children within a reasonable period of time, and that the children were doing well in their foster home. See id. § 5114(a)(2), (3). The court's findings amply support its decision that termination of father's rights was in the children's best interests, and we find no error.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

3